UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FRANK PITTS,**

        **Plaintiff,**                **CIVIL ACTION NO. 17-cv-10184**

        **v.**                        **DISTRICT JUDGE JOHN CORBETT O'MEARA**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Frank Pitts seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 17). Plaintiff has also filed a reply brief in support of his Motion for Summary Judgment. (Docket no. 18.) This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**.

## II.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on April 11, 2012 and May 3, 2012, respectively, alleging that he has been disabled since September 2, 2005, due to a learning disability, vision problems, stomach ulcers, and pain in his knees. (TR 114-15, 250-58, 295.) The Social Security Administration denied Plaintiff's claims on July 26, 2012, and Plaintiff requested a *de novo* hearing. (TR 87-115, 156-57.) On July 10, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Jerome B. Blum. (TR 60-86.) The ALJ issued an unfavorable decision on September 21, 2013, but the Appeals Council remanded the matter for further consideration of Plaintiff's maximum residual functional capacity (RFC) and of whether drug addiction and alcoholism are contributing factors to the finding of disability. (TR 116-44.) On remand, Plaintiff appeared with a representative and testified at another hearing before the ALJ on August 20, 2015, at which Plaintiff amended his alleged onset date to July 1, 2014. (TR 36-59.) The ALJ then issued another unfavorable decision on September 18, 2015, which the Appeals Council declined to review. (TR 1-6, 15-29.) Plaintiff subsequently commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 14 at 5-9), Defendant (docket no. 17 at 5-7), and the ALJ (TR 19-20, 21-22, 23-27, 28) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony. Defendant also incorporates the ALJ's recitation of the facts into her brief. (Docket no. 17 at 7.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between

2

these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

As an initial matter, because the amended alleged onset date of July 1, 2014 postdates Plaintiff's date last insured, the ALJ found that Plaintiff's request for a hearing regarding his application for disability insurance benefits was withdrawn and dismissed and that the initial unfavorable July 26, 2012 determination regarding that application remains in effect.[1] (TR 15.) With regard to Plaintiff's application for supplemental security income, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of July 1, 2014, and that Plaintiff suffered from the following severe impairments: status-post motor vehicle-pedestrian accident with residual pain syndrome, pulmonary embolism, deep vein thrombosis, anxiety, mood disorder, and history of a learning disorder. (TR 18.) Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 18-22.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except such work must be unskilled in nature and allow for a sit/stand option exercisable at the claimant's discretion.

(TR 22-27 (footnote omitted).) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of

---

[1] Plaintiff must prove that his disability began prior to his date last insured in order to qualify for disability insurance benefits. *See* 20 C.F.R. § 404.101(a); *Henley v. Comm'r of Soc. Sec.*, 58 F.3d 210, 212 n.4 (6th Cir. 1995) ("Insurability is a prerequisite to receipt of disability benefits but not to receipt of SSI benefits.").

jobs in the national economy. (TR 28-29.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from July 1, 2014, through the date of the decision. (TR 16, 29.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting

that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in

response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) "the ALJ's Step 3 determination is improper and not supported by substantial evidence;" (2) "the ALJ failed to obtain an expert medical opinion on the issue of medical equivalency;" and (3) "the ALJ's RFC assessment and corresponding hypothetical questions to the VE are not supported by substantial evidence."  (Docket no. 14 at 10, 11-20.)

#### 1.     The ALJ's Step-Three Determination

Plaintiff contends that the ALJ's step-three determination that Plaintiff's impairments do not meet Listing 12.05C is not supported by substantial evidence.  (Docket no. 14 at 11-16.) Listing 12.05C provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C. In order to demonstrate intellectual disability under Listing 12.05C, Plaintiff must demonstrate that his impairment satisfies the diagnostic and severity criteria of that listing. More specifically, Plaintiff must demonstrate (1) significantly subaverage intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or mental impairment imposing an additional and significant work-related limitation of function. *West v. Comm'r*, 240 F. App'x 692, 697-98 (6th Cir. 2007). "The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) (citing *Heller v. Doe,* 509 U.S. 312, 329 (1993) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* 28–29 (3d rev. ed. 1987) ("DSM–III"))). *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 12.00C(1) (defining adaptive activities to include activities of daily living such as cleaning, cooking, shopping, paying bills, maintaining a residence, taking public transportation, using telephones, and exercising proper self-care).

Here, the ALJ found that the requirements of Listing 12.05C were not met because the record did not establish that Plaintiff had the necessary deficits in adaptive functioning:

> As noted above, the claimant had the requisite verbal IQ score in 1999 and the requisite verbal, performance, and full-scale IQ scores in 2011 (however, as discussed, these results were considered invalid) (Exhibit 8F/4). In addition, as established above, the objective medical evidence documents additional severe impairments. However, Listing 12.05C also requires significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period overall; i.e., the evidence demonstrates or supports *onset of the impairment before age 22*.
>
> With this rule in mind, the undersigned finds the evidentiary record does not contain sufficient evidence demonstrating the necessary deficits in adaptive functioning initially manifested prior to age 22. For example, as noted above, the claimant lived alone and prepared complete meals for himself. He had a female friend that helped him do his laundry. He also did crossword puzzles, watched television, went shopping, used public transportation, went to church and kept in contact with family either in person or over the telephone (Exhibit 8F and testimony). Such activities and abilities are not indicative of subaverage general intellectual functioning. Such cognitive abilities are more consistent with a learning disability rather than an intellectual disability (i.e., mental retardation).

(TR 21-22 (emphasis in original).)

Plaintiff relies on non-binding precedent from a sister district, *Rineholt v. Astrue*, 617 F. Supp. 2d 733 (E.D. Tenn. 2009) to argue that the evidence cited by the ALJ is insufficient to show that Plaintiff does not have deficits in adaptive functioning. (Docket no. 14 at 15-16; docket no. 18 at 2.) Conversely, the Sixth Circuit and courts in this district have found that evidence similar to that relied upon by the ALJ was sufficient to find a lack of deficits in adaptive functioning. *See, e.g., Hayes*, 357 F. App'x at 677 (evidence that the claimant cared for herself and her husband, cooked meals, did laundry, shopped, managed her finances, and used public transportation showed that her adaptive skills were not deficient); *Noble v. Comm'r of Soc. Sec.*, No. 14-CV-12588, 2015 WL 4934562, at *4 (E.D. Mich. Aug. 18, 2015) (claimant's ability to raise her children, live alone, attend GED classes, cook, do housework, count money,

do basic math, achieve average grades in school, drive, and shop by herself are valid signs of adaptive functioning); and the case most similar to Plaintiff's, *Davis v. Comm'r of Soc. Sec.*, No. 13-13319, 2014 WL 7883577, at *3-4 (E.D. Mich. Dec. 15, 2014), *report and recommendation adopted*, No. 13-13319, 2015 WL 668035 (E.D. Mich. Feb. 17, 2015) (claimant who was capable of handling all self-care requirements, was reportedly well-groomed at therapy sessions, lived with his father, had a girlfriend, utilized public transportation if he could find someone to accompany him, and was able to regularly watch television and use the computer to socially interact with friends and family did not have the deficits in adaptive functioning necessary to satisfy the requirements of Listing 12.05).

The crux of Plaintiff's argument is not that the ALJ erred in relying upon the aforementioned evidence, but that there is other evidence in the record upon which the ALJ did not rely that supports a finding that Plaintiff does have deficits in adaptive functioning. (Docket no. 14 at 14-16; docket no. 18 at 2.) Plaintiff then cites to several examples of this evidence. (*Id.*) For example, Plaintiff cites to his sporadic work history; his noted body odor during the face-to-face interview at the Social Security Administration's field office, which he claims is indicative of poor personal hygiene; the fact that the house he lived in at the time of the hearing was leased for him by his pastor and sister, who also assisted Plaintiff with daily chores; and his testimony that he does not drive. (*Id.*)

Indeed, the ALJ did not explicitly discuss all of the evidence cited by Plaintiff in support of his position. But "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)). Moreover, elsewhere in his decision,

the ALJ did consider some of the evidence cited by Plaintiff, as well as other evidence contradictory to that cited by Plaintiff. For instance, in discussing Plaintiff's activities of daily living (which, as the ALJ noted, include adaptive activities) the ALJ noted Plaintiff's testimony that his sister and pastor assist him with certain activities. (TR 19 n.3.) The ALJ also pointed out that Plaintiff admittedly maintained his personal hygiene and grooming. (TR 19 (citing TR 100).)

In making the instant argument, Plaintiff essentially points to evidence in the record that could support a determination contrary to the ALJ's and invites the court to reweigh the evidence and substitute its own judgment for that of the ALJ; but it is not the court's role to resolve conflicts in the evidence. *See Brainard*, 889 F.2d at 681 (citation omitted). The evidence cited by Plaintiff does tend to support his assertions, but there is also substantial evidence supporting the ALJ's conclusion. And if the ALJ's decision is supported by substantial evidence, it must be affirmed, even if substantial evidence also supports the opposite conclusion. *See Her*, 203 F.3d at 389-90. Therefore, this issue falls within the ALJ's zone of choice, *see Mullen, supra*, and his step-three determination that Plaintiff's impairments do not meet Listing 12.05C should not be disturbed.

        2.    *The Need for an Expert Medical Opinion Regarding Medical Equivalency*

Next, Plaintiff contends that the ALJ erred by failing to obtain an expert medical opinion regarding medical equivalency for Listing 12.05C. (Docket no. 14 at 16-18.) The only effort that Plaintiff has made in developing an argument in this portion of his brief pertains to whether the ALJ should have obtained an updated opinion on medical equivalency in light of the fact that "a valid IQ test took place on May 17, 2013, after the DDS explanation on July 26, 2012." (*Id.* at 17 (citing TR 524).) Under Social Security Ruling (SSR) 96-6p, an ALJ must obtain an

updated opinion on the issue of medical equivalence when additional medical evidence is received that the ALJ believes may change the state-agency consultant's finding that an impairment is not equivalent to a listing.  SSR 96-6p, 1996 WL 374180, at *3-4 (S.S.A. July 2, 1996); *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 723 (6th Cir. 2012)).  In order for the ALJ's decision to be erroneous based upon his failure to seek an updated medical opinion, Plaintiff has to show that the May 17, 2013 IQ test results did, in fact, "call[] for an updated medical opinion."  *See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 830 (6th Cir. 2009).  Plaintiff offers no further argument or analysis in this regard, and has therefore failed to make such a showing.  Moreover, as Defendant points out, the state-agency psychologist, Dr. Dyan Hampton-Aytch, Ph.D. considered the results of Plaintiff's previous IQ test administered by Detroit Public Schools (which meet the requirements of Listing 12.05C), and those results correlate with the results of the May 17, 2013 test.  (Docket no. 17 at 14 (citing TR 96, 526); TR 354.)  Because both sets of test results fall within the requisite IQ range under Listing 12.05C, the May 17, 2013 test results are cumulative and redundant, and do not constitute the type of evidence that would change Dr. Hampton-Aytch's opinion.

To the extent that Plaintiff argues that there is no expert medical opinion regarding medical equivalency for Listing 12.05C in the record, Plaintiff fails to develop this argument in any way.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted).  Nevertheless, there is evidence that Dr. Hampton-Aytch considered Listing 12.05.  Notably, Dr. Hampton-Aytch considered Plaintiff's IQ scores and his adaptive activities

11

of daily living, and she opined that Plaintiff is able to perform "simple work activity" subject to certain social limitations. (TR 96.) Plaintiff's Motion should therefore be denied with regard to this issue.

### 3. The ALJ's RFC Assessment and Hypothetical Questions to the VE

Finally, Plaintiff argues that the ALJ's RFC assessment and his corresponding hypothetical questions to the VE are not supported by substantial evidence because they do not account for Plaintiff's moderate limitations in concentration, persistence, or pace. (Docket no. 14 at 18-20.) Findings of moderate limitations in concentration, persistence, or pace do not necessarily preclude "simple, routine, unskilled work." *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844-BC, 2010 WL 3905375, at *2 (E.D. Mich. Sept. 30, 2010) (citations omitted). Such limitations may, however, result in the claimant being unable to meet quotas, stay alert, or work at a consistent rate of speed. *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005). Plaintiff argues that the only non-exertional limitation assessed by the ALJ, unskilled work, is insufficient to account for these limitations in his case. (Docket no. 14 at 19.)

Courts in this district draw a distinction between cases in which a medical expert finds a moderate deficiency in concentration, persistence, or pace from those in which the ALJ independently finds such a limitation. "When the ALJ has found such a limitation, the ALJ must incorporate these limitations into the hypothetical questions." *McPhee v. Comm'r of Soc. Sec.*, No. 11-13399, 2013 WL 1277889, at *2 (E.D. Mich. Mar. 27, 2013) (citations omitted). Courts are more likely to order a sentence-four remand in cases where the ALJ made the finding of moderate deficiencies in concentration, persistence, or pace in the absence of a medical opinion that found similar moderate deficiencies and indicated that the plaintiff was still capable of sustained work. *Cwik v. Comm'r of Soc. Sec.*, No. 10-15121, 2012 WL 1033578, at *10 (E.D.

Mich. Feb. 23, 2012) (citing *Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 WL 6000701, at *4 (E.D. Mich. Nov. 28, 2011)).

Here, the ALJ's determination that Plaintiff has no more than moderate difficulties in maintaining concentration, persistence, or pace was not independently made; rather, the ALJ acknowledged and relied upon the opinion of the state-agency reviewing psychologist, Dr. Hampton-Aytch. (TR 19-20.) Dr. Hampton-Aytch reviewed and evaluated Plaintiff's claim for supplemental security income at the initial determination level and opined that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. (TR 95.) Despite those difficulties, Dr. Hampton Aytch found that Plaintiff is able to perform "simple work activity that does not require contact with the general public or frequent interaction with coworkers and supervisors." (TR 96.) The ALJ assigned "some weight" to Dr. Hampton-Aytch's opinion and adopted it in part, except for the social limitations. (TR 25.) The ALJ then incorporated Dr. Hampton-Aytch's opinion into his decision by explicitly limiting Plaintiff to "simple duties that require little or no judgment (i.e., unskilled work)" and including a limitation of unskilled work in Plaintiff's RFC. (TR 20, 22.)

The discussion above demonstrates that the ALJ relied upon and adopted the opinion of a medical source who assessed Plaintiff's moderate difficulties in maintaining concentration, persistence, and pace, and found that Plaintiff was still able to engage in substantial gainful activity, albeit with limitations. The ALJ then incorporated those limitations into Plaintiff's RFC and the hypothetical questions that he posed to the VE, to which the VE responded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (TR 56-57.) There is no error here on the part of the ALJ, as the ALJ appropriately accommodated for Plaintiff's limitations in concentration, persistence, or pace in the RFC and

the hypothetical questions. Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 14) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 17).

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  February 14, 2018        s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

     I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  February 14, 2018        s/ Leanne Hosking
                                 Case Manager